

## IN THE 29TH JUDICIAL CIRCUIT COURT, JASPER COUNTY, MISSOURI

| Judge or Division:<br>DAVID C DALLY | Case Number: 13AP-CC00035 | |
|---|---|---|
| Plaintiff/Petitioner:<br>WAYLON VAUGHAN<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>ANNE WIESE SCHIAVONE<br>SUITE 810<br>4600 MADISON AVE<br>KANSAS CITY, MO  64112 | FILED<br>LINDA WILLIAMS-CLERK<br><br>MAY 30 2013<br><br>JASPER COUNTY CIRCUIT CLERK<br>CARTHAGE, MISSOURI |
| Defendant/Respondent:<br>AEGIS COMMUNICATIONS GROUP, INC.<br>Nature of Suit:<br>CC Other Tort | Court Address:<br>302 S. Main<br>CARTHAGE, MO  64836 | (Date File Stamp) |

### Summons in Civil Case

The State of Missouri to: AEGIS COMMUNICATIONS GROUP, INC.
Alias:

REG AGENT: SOLUTIONS INC
325-A EMERALD LANE
JEFFERSON CITY, MO 65101

COURT SEAL OF
JASPER COUNTY

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**Linda Williams, Circuit Clerk**

_5-30-13_  _____Clerk_____
Date

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐ other _____.
Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____              _____
Printed Name of Sheriff or Server              Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:
                Subscribed and sworn to before me on _____ (date).
(Seal)
                My commission expires: _____        _____
                                        Date                    Notary Public

**Sheriff's Fees**
Summons         $_____
Non Est         $_____
Sheriff's Deputy Salary
Supplemental Surcharge   $  10.00
Mileage         $_____  (_____ miles @ $.____ per mile)
Total           $_____

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**EXHIBIT A**

IN THE CIRCUIT COURT OF JASPER COUNTY, MISSOURI

| | |
|---|---|
| WAYLON VAUGHAN,<br><br>    Plaintiff,<br><br>v.<br><br>AEGIS COMMUNICATIONS GROUP, LLC,<br>Serve Registered Agent:<br>Registered Agent Solutions, Inc.<br>3225-A Emerald Lane<br>Jefferson City, MO 65109<br><br>    Defendant. | Case No. 13ARCC00035<br><br>**JURY TRIAL DEMANDED**<br><br>FILED<br>LINDA WILLIAMS-CLERK<br>MAY 23 2013<br>JASPER COUNTY CIRCUIT CLERK<br>CARTHAGE, MISSOURI |

### PETITION

COMES NOW plaintiff Waylon Vaughn, by and through his attorneys, and in support of his petition against defendant Aegis Communications Group, LLC ("Aegis"), states and alleges as follows:

### STATEMENT OF THE CASE

Plaintiff seeks monetary damages, compensatory and punitive, to redress the injuries and damage he sustained as a result of Defendant's fraudulent and negligent misrepresentations and breach of implied contract. Additionally, Plaintiff seeks compensation because Defendant was unjustly enriched by Plaintiff, and because Defendant forced Plaintiff to perform labor against his will.

### PARTIES

1. Plaintiff, Mr. Waylon Vaughn, is and was at all times mentioned herein a resident and citizen of the state of Missouri.

2. Plaintiff has been employed by Defendant since approximately March 12, 2007 and is currently a sales agent.

**EXHIBIT A**

3. Defendant Aegis is a Delaware Limited Liability Company with its principal place of business in Texas, is registered to do business in Missouri, and can be served through its registered agent. Its registered agent is Registered Agent Solutions, Inc., located at the address included in the caption.

4. At all times mentioned herein, before and after, all individually described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or the actions were expressly authorized by Defendant and/or their actions were ratified by Defendant, thus making Defendant liable for said actions under the doctrine of respondeat superior.

## JURISDICTION AND VENUE

5. Jurisdiction and venue are proper in this Court under R.S.Mo. § 508.010.4 because Plaintiff's first injury occurred in the city of Joplin, Missouri, in Jasper County.

## FACTS COMMON TO ALL COUNTS

### *While in the United States:*

6. At all times relevant herein, Plaintiff worked as a sales agent at the call center owned and operated by Defendant in Joplin Missouri.

7. During or around January, 2011 Aegis' HR Department distributed fliers about a study abroad program that was purported to be a valuable educational opportunity.

8. That opportunity was the chance to apply for enrolment in a one-year study abroad or "off-shore" program at Aegis Global Academy ("Academy").

9. The Academy is located in Cambiatore, India.

10. Plaintiff could participate in the offshore program without losing his employment at the "onshore" (Joplin, Missouri) location.

11. Plaintiff was told that selection to the off shore program would be very competitive and only employees with a good performance record who were candidates for promotion would be eligible to participate.

12. The program would cost Plaintiff nothing. He would receive an allowance/stipend and be provided living quarters in exchange for working minimal hours.

13. Upon completion of the study abroad program, Plaintiff would receive a Certificate in Program Management from Cornell University.

14. Pursuant to a written agreement Plaintiff entered into with Defendant, upon completion of the program and return to Joplin, he was to be placed in the "ACE Program," which is Defendant's supervisor fast-track training program.

15. Plaintiff applied for the program and was accepted.

16. Plaintiff and other employees accepted into the program were required to go to Irving, Texas for training and preparation for their studies in India.

### What Aegis Told Plaintiff about the Program:

17. Plaintiff was informed about the details of the program from Defendant's HR Department.

18. The program was to be completed in twelve months, and students would be in India the entire duration of the program.

19. The following costs would be incurred by Defendant: lodging, transportation, travel, health insurance & education fees.

20. To earn the Program Management Certificate, Plaintiff would have to complete seven individual two-week programs and have the option of completing four elective courses.

21. In addition to completing classes, Plaintiff understood he would be working part-time, performing the same duties that he performed in Joplin, Missouri.

22. Plaintiff was told that his working hours in India would be the "same" as they were in the United States.

23. Plaintiff was told he would receive a monthly allowance of $100.

24. The allowance was to be paid on the first of every month for the duration of the program.

25. Plaintiff was told he would receive a $2000 savings component at the end of the program period.

26. Plaintiff was told the taxes on the $2000 would "amount to a liability of around $300/350."

27. Plaintiff was told that in the event of an early termination of the program, "cost of airfare & Cornell fees will be recovered from the annual savings related pay."

28. Plaintiff was told he would receive a pre-paid calling card once per month with 500 minutes pre-paid on the card.

29. Plaintiff was provided with a Power Point presentation that included detailed information about the Academy program.

30. The housing accommodations were described to Plaintiff in the following manner:

- Two single beds per room. Two rooms per apartment
- Attached bathroom
- Sofa sets in living room

- Refrigerator
- Microwave oven
- TV with cable connection
- Air-conditioning in both bedrooms
- Wardrobe/study table/dining table

31. Plaintiff was informed that he would have Internet access at his residence free of cost.

32. Plaintiff was told a full-service laundry facility would be on the premises of his living quarters.

33. Plaintiff was shown photographs of an apartment that appeared to conform to the description provided to him. The apartments depicted were well constructed, modern and clean.

34. Plaintiff was told that he would "Save substantially more than [he] would back home, despite enjoying equivalent lifestyle."

35. Plaintiff received a food menu from Defendant that indicated he would receive three meals per day.

36. Plaintiff and Defendant entered into a written Leave of Absence Agreement before Plaintiff departed for India. The Agreement stated Plaintiff was to study for one year at Aegis University and upon successful completion and returning to Joplin, he would be placed in the "ACE" supervisor fast-track training program.

### *What Happened in India:*

37. Upon arriving in India, Plaintiff was initially assigned to work six-hour works shifts.

38. Plaintiff was eventually required to work eight-hour work shifts.

39. Towards the end of the program, Plaintiff was required by Defendant to work overtime hours every week.

40. Plaintiff was forced to work overnight shifts, from approximately 11:00 p.m. to 8:30 a.m. even though he never worked those hours while living in Joplin.

41. Plaintiff did not receive the $100 allowance timely or in the full amount as he was promised before he began the program.

42. Payment was made to Plaintiff in Rupees, the currency of India.

43. Plaintiff received the flat amount of 4500 Rupees per month.

44. The amount of Rupees allotted to Plaintiff per month was not modified to reflect changes in the exchange rate between U.S. Dollars and Indian Rupees.

45. The living quarters provided to Plaintiff were not similar to what he was shown prior to agreeing to participate in the program.

46. Plaintiff had no internet access as his residence for approximately three months.

47. Plaintiff had no laundry service for approximately three months.

48. The living facility only had electricity for a total of approximately six hours per day. Those hours were not consecutive. Generator powered the light and fan in the room for an additional two hours per day.

49. Plaintiff was never told the electricity would only be available six hours per day.

50. Sometimes Plaintiff was only provided with two meals per day. He had to purchase the third meal on his own.

51. Because of the lack of continuous electricity in Plaintiff's living quarters, he was unable to store food in the refrigerator without it spoiling.

52. The food provided to Plaintiff by Defendant was often spoiled, rotten, and/or tainted and therefore unsafe for human consumption. Many of his classmates became ill as a result of eating the food served.

53. Plaintiff did not always have running water in his living quarters.

54. Plaintiff made multiple complaints to his supervisors, Academy Administrators, and U.S. employees of Defendant concerning the living conditions in India, the working conditions and excessive hours he was required to work, the poor food quality and inadequate food supply, and the lack of and untimely nature of the allowance payments.

55. After approximately two months of being in India, Plaintiff asked if he could return to the United States.

56. Plaintiff made a request to return home to Shaun Chettair, who told Plaintiff he would have to buy his own plane ticket back to the United States.

57. Plaintiff also asked to return to the United States after approximately nine months of being in India.

58. That time, Plaintiff made a request to HR Representative Mary Mullens, who also told Plaintiff he would have to provide his own way back to the United States.

59. After making two separate requests to terminate the program early, Plaintiff was told that if he wanted to return to the United States, he would have to buy his own plane ticket and cover the other travel expenses in order to return to America. At that time Plaintiff was not given the option to have the costs deducted from the "annual savings related pay."

60. Additionally, Plaintiff was told that if he did not complete the offshore Academy program, is employment in Joplin, Missouri would be terminated.

7

**EXHIBIT A**

61. After each request to return to America before the Academy program was completed, Plaintiff was told he would be fired if he chose to do so.

62. Plaintiff was forced to stay in India and complete the program in order to remain employed by Defendant.

63. Plaintiff completed the offshore program.

64. Plaintiff received the $2000 savings component at the end of the program, and approximately $600 were paid in taxes, resulting in approximately $1400 retained by Plaintiff.

65. Plaintiff returned to Joplin, Missouri in approximately July, 2012.

66. Plaintiff remains employed by Defendant.

67. Plaintiff has not been placed in the ACE Program, or any other supervisor fast-track training program by Defendant.

## COUNT I:
## FRAUDULENT INDUCEMENT AND
## MISREPRESENTATION IN EMPLOYMENT NEGOTIATIONS

68. Plaintiff incorporates by reference each and every preceding paragraph as if fully set forth herein.

69. Defendant made the following representations to Plaintiff:

    a. He was told he would receive $100 per month;
    b. He would be placed in the ACE or supervisor fast-track training program upon completion of the program;
    c. He was shown photographs of an apartment and told it accurately represented the room he would be staying in;
    d. He was told he would have internet access at this living quarters;
    e. He was told he would have access to a full-service laundry facility;
    f. He was told he would receive three meals per day;
    g. He was told that while in India he would work the same hours that he worked in Missouri;
    h. He was told at the end of the program he would have $2,000 put into a savings account in his name, and it was "so planned" that the total taxes would be around $300 – $350;

      i.    He was told if he terminated the program early the costs would "be recovered from the annual savings related pay."

70. The representations made by the Defendant were false in the following ways:

    a.    He was paid 4500 rupees per month without consideration of the exchange rate, which meant he did not receive $100 per month;
    b.    Plaintiff completed the program, but is still a sales agent and has never been trained to be a supervisor;
    c.    The photographs do not accurately represent the hostel he was placed in upon his arrival in India;
    d.    He did not have internet access for the first three months he lived in Cambiatore, India;
    e.    He did not have access to laundry facilities for the first three months, at which point one small washing machine was provided for the thirty Academy participants;
    f.    He did not always receive three meals per day, and some of the meals he received were not fit for human consumption;
    g.    His work hours in India were vastly different than the hours he worked in Missouri. He was required to work night shifts, and split shifts throughout the night. He never worked nights shifts in Missouri; he was required to work more hours than represented upon plaintiff's enrollment in the program;
    h.    The total taxes required of the $2,000 savings component totaled approximately $600;
    i.    He tried to terminate the program early, but was told that would result in paying for expenses out of pocket, and total loss of employment in Missouri.

71. Plaintiff was told he would receive the stipend and SIM card on the first of every month, but he did not.

72. Each and every representation was material because each benefit of the program influenced Plaintiff to participate in the program. If Plaintiff would have known the untruthfulness of any representation, he would have refused to participate in the program.

73. Defendant knew the representations were false and/or were ignorant to the matter and/or had a reckless disregard for the truth.

74. Defendant never intended to pay $100 per month in that the pay was 4,500 rupees, and payment was intentionally suspended until the exchange rate favored Defendant.

75. Defendant intentionally showed Plaintiff photographs that were not representative of the rooms he stayed in, although the Defendant told him it was.

76. Defendant intentionally increased the work hours, and decreased the educational hours, thereby misleading Plaintiff about the amount of work he would be performing.

77. Defendant intended each representation to be acted upon by Plaintiff. The representations were made verbally and in writing to Plaintiff before he decided to participate. Defendant presented the Academy as a valuable experience and intended to persuade Plaintiff into participating by making such representations.

78. Plaintiff did not know that the representations made to him were false. There was no way that he could have discovered the falsity of the representations before he decided to attend the Academy.

79. Plaintiff relied on each representation in his decision to participate in the program and attend the Academy.

80. The representations were made to Plaintiff by his immediate employer, Aegis corporate representatives, and Human Resources professionals employed by Defendant; therefore, he had the right to trust in and/or rely on Defendant's representations.

81. Plaintiff suffered injuries because of the Defendant's fraudulent and false representations. These injuries were proximately caused by Defendant's misrepresentations.

82. The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and to deter Defendant and other from similar conduct.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant on Count I of the Petition, and prays for compensatory and punitive damages, costs expended, for prejudgment and post-judgment interest as provided by law, and other relief as this Court deems just, proper, and equitable.

## COUNT II:
## NEGLIGENT MISREPRESENTATION

83. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

84. In regards to the representations asserted in Count I, any representation not known to be false by Defendant was, in fact, false because of Defendant's lack of reasonable care in making the representations to Plaintiff.

85. Each representation made to Plaintiff was material.

86. Defendant intentionally provided the information to Plaintiff.

87. Plaintiff relied on the representations, which was justifiable.

88. Plaintiff's reliance resulted in loss to his person: emotionally, and economically.

89. Defendant's false representations to Plaintiff actually and proximately caused his injuries.

90. The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and

others, and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and to deter Defendant and other from similar conduct.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant on Count II of the Petition, and prays for compensatory and punitive damages, costs expended, for prejudgment and post-judgment interest as provided by law, and other relief as this Court deems just, proper, and equitable.

### COUNT III:
### UNJUST ENRICHMENT

91. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

92. Plaintiff conferred a benefit onto the Defendant by providing labor services to Defendant.

93. Plaintiff was compensated with less than $100 per month.

94. The services Plaintiff provided for Defendant were more valuable than $100 per month.

95. The Defendant accepted and retained the benefit. The Defendant received labor and services at a discount price because of the situation it placed Plaintiff in.

96. The Defendant's retention of the benefit would be unjust. Plaintiff expected to receive quality education from Cornell University while he was abroad in India, however the educational materials provided were elementary and he did not receive instruction from professors or instructors as promised.

97. Plaintiff performed his end of the bargain, but did not receive in return the compensation he expected, and therefore, the Defendant's retention of the benefit would be unjust and/or inequitable.

98. Plaintiff received less than what he expected for his services because of the Defendant's misconduct.

99. The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to punitive damages from defendant, to punish Defendant and to deter Defendant and other from similar conduct.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant on Count III, and prays for compensatory and punitive damages, costs expended, for prejudgment and post-judgment interest as provided by law, and other relief as this Court deems just, proper, and equitable.

## COUNT IV:
## BREACH OF CONTRACT

100. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

101. An implied contractual agreement existed between Plaintiff and Defendant, the terms and conditions of which included, but were not limited to, an agreement by Plaintiff to perform services for Defendant in exchange for adequate housing, three meals per day, timely pay of $100 per month and SIM card, an educational program with access to instructors, and a certificate upon completion of the courses.

102. The agreement was made between competent parties and contained mutual obligations and valid consideration. Plaintiff performed all conditions precedent, if any, required of him under the implied agreement.

103.   Defendants failed and refused to perform their obligations in accordance with the terms and conditions of the implied agreement by failing to compensate Plaintiff in a timely fashion, providing inadequate housing that lacked electricity and/or running water, serving Plaintiff less food than agreed upon and that was unfit for human consumption, failing to provide instructors to assist the educational program, requiring Plaintiff to work more hours than agreed upon and shifts that were different than represented.

104.   Plaintiff suffered damages from Defendant's breach in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant on Count IV of the Petition and prays for compensatory, incidental, and consequential damages, attorneys' fees and costs, pre-judgment and post-judgment interest as provided by law, and such other relief the Court deems fair and equitable.

### COUNT V:
### FORCED LABOR
### (18 U.S.C. §§ 1589; 1595)

105.   Plaintiff incorporates by reference each and every preceding paragraph and thereby restates the same as if completely restated herein.

106.   It is unlawful for individuals or entities to obtain the labor or services of others by means of any scheme, plan, or pattern intended to cause persons to believe that if they do not perform the service or labor, they will suffer serious harm, including physical, psychological, and financial harm. 18 U.S.C. § 1589.

107.   18 U.S.C. § 1595 provides a civil remedy to individuals who have been forced to perform labor or services in a manner described in the preceding paragraph.

108. Defendant was not candid in its representation of the experience of studying at Aegis University when it convinced Plaintiff to apply for the program.

109. Once Plaintiff was living in India, he was forced to work or else he would be terminated from the program.

110. Plaintiff was told by Defendant that if he did not continue to work full time hours in India for 4500 Rupees per month, his employment in Joplin, Missouri would be terminated.

111. Plaintiff believed he would suffer serious financial harm if he did not continue to perform labor and/or services for Defendant.

112. Plaintiff's belief was the result of Defendant's plan, scheme, or plan.

113. Defendant intended Plaintiff to form the belief that he would suffer harm if he stopped providing labor and/or services to Defendant.

114. Plaintiff was financially unable to pay for the costs of the trip and would be unable to support himself if she returned to Joplin unemployed.

115. As a result of the tornado and widespread devastation in Joplin, Missouri, Plaintiff feared he would be unable to find another job upon returning to Joplin.

116. A reasonable person of the same background and in the same circumstances as Plaintiff would have felt compelled to perform or continue performing labor or services in order to avoid physical, psychological, and/or financial harm.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant on Count V of the Petition, and prays for compensatory and punitive damages, attorney's fees, costs expended, prejudgment and post-judgment interest as provided by law, and other relief as this Court deems just, proper, and equitable.

HOLMAN SCHIAVONE, LLC

By: _____/s/ Anne Schiavone_____
Anne Schiavone, MO Bar# 49349
Matt J. O'Laughlin, MO Bar#54025
Kelly McCambridge, MO Bar# 60839
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
Email: aschiavone@hslawllc.com
Email: molaughlin@hslawllc.com
Email: kmccambridge@hslawllc.com

ATTORNEYS FOR PLAINTIFF

## IN THE CIRCUIT COURT OF JASPER COUNTY, MISSOURI

| | |
|---|---|
| WAYLON VAUGHAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AEGIS COMMUNICATIONS GROUP, LLC, ) <br> Serve Registered Agent: ) <br> Registered Agent Solutions, Inc. ) <br> 3225-A Emerald Lane ) <br> Jefferson City, MO 65109 ) <br> ) <br> Defendant. ) | Case No. 13AP-CC00035 <br><br> **JURY TRIAL DEMANDED** |

### MOTION FOR APPOINTMENT OF PRIVATE PROCESS SERVER

COMES NOW plaintiff Waylon Vaughn, by and through counsel, and hereby moves for the appointment of Judith Borchelt, special process server in the above captioned matter to serve. In support of said motion, plaintiff states that Judith Borchelt is over the age of 18 and is not a party of the Petition.

HOLMAN SCHIAVONE, LLC

By: _/s/ A. Schiavone_
Anne Schiavone, MO Bar# 49349
Matt J. O'Laughlin, MO Bar#54025
Kelly McCambridge, MO Bar# 60839
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
Email: aschiavone@hslawllc.com
Email: molaughlin@hslawllc.com
Email: kmccambridge@hslawllc.com

ATTORNEYS FOR PLAINTIFF

**EXHIBIT A**

IN THE CIRCUIT COURT OF JASPER COUNTY, MISSOURI

| | |
|---|---|
| WAYLON VAUGHAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13AP-CC00035 |
| ) | |
| AEGIS COMMUNICATIONS GROUP, LLC, ) | |
| Serve Registered Agent: ) | **JURY TRIAL DEMANDED** |
| Registered Agent Solutions, Inc. ) | |
| 3225-A Emerald Lane ) | |
| Jefferson City, MO 65109 ) | |
| ) | |
| Defendant. ) | |

## ORDER FOR APPOINTMENT OF PRIVATE PROCESS SERVER

It is hereby ordered that plaintiff's Motion for Appointment of Private Process Server is sustained and Judith Borchelt is hereby appointed to serve process in the above captioned matter.

_____          _____
DATE                                                          JUDGE

**EXHIBIT A**



Registered Agent Solutions, inc.
*Corporate Mailing Address*
1701 Directors Blvd.
Suite 300
Austin, TX 78744

Phone: (888) 705-RASi (7274)

# SERVICE OF PROCESS RECEIPT

6/10/2013

Bing Regalado
**Aegis Communications Group, LLC**
624 S. Grand Avenue
Suite 2940
Los Angeles, CA 90017 USA

**NOTICE OF CONFIDENTIALITY**

This notice and the information it contains are intended to be a confidential communication only to the individual and/or entity to whom it is addressed. If you have received this notice in error, immediately call (888) 705-7274.

**RE:  Aegis Communications Group, LLC**

This receipt is to inform you that Registered Agent Solutions, inc., has received a Service of Process on behalf of the above-referenced entity.  As your Registered Agent, our office received the attached document(s) and hereby are forwarding the attached document(s) to you for your immediate review.  A summary of relevant information related to this particular Service of Process has been obtained and is shown below, however it is important that you review the attached document(s) in their entirety for complete and detailed information.

### SERVICE INFORMATION

| | |
|---|---|
| Service Date: | 6/10/2013 |
| Service Time: | 11:25 AM CST |
| Service Method: | Process Server |

### RASi REFERENCE INFORMATION

| | |
|---|---|
| Service No.: | 0023410 |
| RASi Office: | Missouri |
| Rec. Int. Id.: | BEF |

### CASE INFORMATION

| | |
|---|---|
| Case Number: | 13ARCC00035 |
| File Date: | 05/30/2013 |
| Jurisdiction: | CIRCUIT COURT OF JASPER COUNTY, MISSOURI |
| Case Title: | WAYLON VAUGHAN VS. AEGIS COMMUNICATIONS GROUP, LLC |

### ANSWER / APPEARANCE INFORMATION

REVIEW DOCUMENT    *(Be sure to review the document(s) for any and/or all relevant dates)*

### AGENCY / PLAINTIFF INFORMATION

| | |
|---|---|
| Firm/Issuing Agent: | HOLMAN SCHIAVONE, LLC |
| Attorney/Contact: | ANNE SCHIAVONE |
| Location: | Missouri |
| Telephone No.: | 816-283-8738 |

### DOCUMENT(S) RECEIVED & ATTACHED

Summons
Demand for Jury Trial
Petition: PETITION
OtherDetail: MOTION FOR APPOINTMENT OF PRIVATE PROCESS SERVER; ORDER FOR APPOINTMENT OF

### ADDITIONAL NOTES

**Questions or Comments...** Should you have any questions or need additional assistance, please contact the SOP Department at (888) 705-7274.

You have been notified of this Service or Process per your default account instructions.  RASi offers several methods of notification including Telephone Notification, Email Notification, Web Account Information, and FedEx/US Postal Delivery.  If you would like to update your account's default notification methods or to view Service or Process information, you may do so by logging into your account at www.rasi.com.

**EXHIBIT A**

*Thank you for your continued business!*