UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| WAYLON VAUGHAN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 13-5097-CV-SW-DGK ) |
| AEGIS COMMUNICATIONS GROUP, LLC, | ) ) ) |
| Defendant. | ) |

## SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS
## COUNT V (FORCED LABOR)

Plaintiff's trafficking claim is an attempt to inflate the gravity of his claims against ACG by invoking a federal statute in a way that demeans the serious purpose of the statute. Plaintiff's petition fails to show that Plaintiff is a victim of forced labor. The "threat" of potential termination of employment, a condition that Plaintiff voluntarily accepted before going to India, cannot possibly constitute "serious harm" under the Forced Labor Statute. Likewise, the "threat" of having to pay for his own return to the United States was not "serious harm" under the statute. Plaintiff's forced labor claim should be dismissed for failure to state a claim upon which relief can be granted.

**1.     THE STANDARD.**

Defendant moves pursuant to Rule 12(b)(6) for dismissal of Count V of Plaintiff's petition for failure to state a claim upon which relief can be granted. "The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Elbert v. City of Kansas City, Mo.*, 2013 WL 1223192, *3 (W.D.Mo. Mar. 25, 2013) (citation omitted). The Court construes the facts alleged

in the complaint in the light most favorable to the non-moving party. *Id.* From the facts alleged in the complaint, all reasonable inferences must be drawn in favor of the nonmoving party. *Id.*

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Id.* at *4. "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions or a formulaic recitation of the elements of a cause of action." *Id.*

**2. THE STATUTES.**

In Count V, Plaintiff invokes 18 U.S.C. §§ 1589 and 1595 of the Trafficking Victims Protection Act. Section 1589, entitled "Forced labor," outlaws knowingly providing or obtaining labor or services:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person,
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer **serious harm** or physical restraint…"

18 U.S.C. §1589(a) (emphasis added). The statute defines "serious harm" to mean:

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

2

Case 3:13-cv-05097-DGK   Document 9   Filed 07/17/13   Page 2 of 9

18 U.S.C. §1589(c). Violation of section 1589 is punishable by fine and up to 20 years imprisonment. 18 U.S.C. §1589(d).

Section 1595(a) authorizes a victim of forced labor to bring a civil action against those who perpetrated the forced labor or knowingly benefited from it and to recover damages and reasonable attorneys' fees.

**3.     PLAINTIFF'S AVERMENTS.**

Plaintiff alleges that "Defendant was not candid in its representation of the experience of studying at Aegis University when it convinced Plaintiff to apply for the program" and that while in India he "was forced to work or else he would be terminated from the program." Petition at ¶¶108-09. He further alleges that he was told that if he stopped working in India "his employment in Joplin, Missouri would be terminated," that he "was financially unable to pay for the costs of the trip and would be unable to support himself if she [*sic*] returned to Joplin unemployed," and that he "feared he would be unable to find another job" because of the Joplin tornado. *Id.* at ¶¶114-15. Finally, Plaintiff concludes that a "reasonable person of the same background and in the same circumstances as Plaintiff would have felt compelled to perform or continue performing labor or services in order to avoid physical, psychological, and/ or financial harm." *Id.* at ¶104.

**4.     PLAINTIFF FAILS TO STATE A CLAIM FOR FORCED LABOR.**

   **a.     <u>The "Threat" of Losing a Job Is Not a Threat of Statutory "Serious Harm."</u>**

Although Plaintiff conclusorily alleges he was "forced to work," he does not allege any "force, threat of force, physical restraint or threat of physical restraint." 18 U.S.C. §1589(a)(1). He does not allege that he was compelled to work by "means of serious harm or threats of serious harm." 18 U.S.C. §1589(a)(2). He does not allege any "abuse or threatened abuse of law or legal process." 18 U.S.C. §1589(a)(3).

3

Instead, Plaintiff pleads that he "believed he would suffer serious financial harm if he did not continue to perform labor" and claims that his "belief was the result of Defendant's plan, scheme, or plan." Petition at ¶¶111-12. But Plaintiff's allegations that he was "forced to work or else he would be terminated from the program" and his "employment in Joplin, Missouri would be terminated" fall far short of "a threat of serious harm" under the statute. Petition at ¶¶109, 60. It is not a threat of serious harm to tell a person that he will lose his job if he refuses to work. That "threat" is legally implied, if not expressed, in every employment-at-will contract. Employers have the right to contract for work in exchange for retention of a job and benefits. If it were otherwise, every threat of termination for refusing work would be a federal crime punishable by up to 20 years imprisonment.

    b.    **<u>Conditions of Employment, Voluntarily Accepted, Do Not Become Threats of "Serious Harm" because of Later Job Unhappiness.</u>**

Here, the "threat" of termination from the program and from ACG were expressly and voluntarily accepted by Plaintiff. Plaintiff was an at-will employee of ACG when he voluntarily signed the Leave of Absence Agreement. That agreement conditions reinstatement on successful completion of the one-year study program and remaining in good standing:

> Aegis hereby grants the Employee the right, and gives Employee permission, to take a leave of absence from his employment with Aegis to study at the University for up to one year, commencing July 01, 2011 (the "Leave of Absence").
>
>     \* \* \*
>
> Provided that Employee has successfully completed the one year study program and has remained in good standing throughout such one year period, Employee's return to work at Aegis and Employee's employment with Aegis will be re-instated as if he had never left employment with Aegis.

4

See Leave of Absence Agreement, attached hereto as Ex. A.[1]  Plaintiff further alleges that, as part of the program, he agreed to work "part-time [in India], performing the same duties that he performed in Joplin, Missouri." Petition at ¶21.  Thus, Plaintiff accepted, before he left for India, the "threat" of losing his job if he did not complete the program or work in India.

In applying the Trafficking Victims Protection Act, the Court must distinguish between improper threats or coercion and permissible warnings of adverse but legitimate consequences. *Headley v. Church of Scientology Int'l.*, 687 F.3d 1173, 1180 (9th Cir. 2012) (citation omitted). Here, Plaintiff alleges only permissible warnings of adverse but legitimate consequences.  As in *Headley*, it is "telling" that Plaintiff protests very little about his actual day-to-day work in India and instead focuses his attack on the benefits and compensation that he was provided while in India.  687 F.3d at 1180.  Also as in *Headley*, Plaintiff does not plead that defendant obtained his labor by means of those allegedly inadequate benefits or compensation.  *Id*.  To the contrary, Plaintiff's allegations support the conclusion that those factors made him want to leave India and stop providing labor.

As a matter of law, it is not forced labor to hold a worker to terms of a deal.  As the Central District of California recently observed:

> Enticed by promises of lucrative and exciting employment through a work program, a foreign worker speaks with recruiters about working in the United States.  The recruiters explain the terms and

---

[1] The Court may consider the Leave of Absence Agreement, even though not attached to Plaintiff's petition, because Plaintiff plead the existence and contents of it (paragraph ¶36), and it is therefore "embraced by the pleadings." *See Minnesota Majority, et al. v. Mansky*, 708 F.3d 1051, 1056 (8th Cir. 2013) (policy referred to in the complaint was properly considered by court reviewing motion to dismiss because it was "necessarily embraced by the pleadings.") (citations omitted); *Kushner v. Beverly Enterprises, Inc., et al.*, 317 F.3d 820, 831 (8th Cir. 2003) ("When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.") (citation omitted).

> costs of the work program, and the worker gets a large loan and voluntarily uses it to join the program. After the worker joins the program and begins employment, the worker becomes unhappy. **But if the worker quits, awaiting is a trip home with a massive amount of debt that will be impossible to repay**. Working in the program is the only way to repay the loan. Is this forced labor? Fraud? No. It is a bargained-for exchange. Despite the worker's unhappiness, the terms and costs of the program were known, and the worker voluntarily obtained the loan to join the program. **The worker's eventual discontent does not transform the valid contract with the recruiters into something illegal**.

*Nunag-Tanedo v. East Baton Rouge Parish School Board*, 790 F.Supp.2d 1134, 1136 (C.D.Cal.2011) (emphasis added).

Plaintiff's ultimate feelings of dissatisfaction with the program could not retroactively convert an agreed condition of employment into a threat of "serious harm" to compel forced labor. Indeed, Plaintiff does not claim that the work was any different than he expected or was led to believe, only that he had to work more hours and for fewer benefits. Such complaints do not state a claim for forced labor.

### c. The "Threat" of Having to Pay the Cost of a Return Trip Is Not a Threat of "Serious Harm" under the Statute.

The final question is whether having to "buy [a] plane ticket back to the United States" and "cover other travel expenses" (Petition at ¶¶56, 58, 59) constitutes "serious harm" under 18 U.S.C. §1589(a)(4). Under the statute, the issue is whether the risk of having to pay such expenses is "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. §1589(c). In other words, would a reasonable person in Plaintiff's circumstances feel compelled to perform slave labor to avoid having to pay his way home?

6

Case 3:13-cv-05097-DGK   Document 9   Filed 07/17/13   Page 6 of 9

Plaintiff's "threadbare recital" of the statutory definition of serious harm[2] is insufficient to answer the question. *Aschcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). Accordingly, Plaintiff's claim of "serious harm" boils down to the meaning of one sentence of "surrounding circumstances" in the petition:

> Plaintiff was financially unable to pay for the costs of the trip and would be unable to support himself if she [*sic*] returned to Joplin unemployed.

Plaintiff's Petition at ¶114. This sentence is artfully drafted to give the impression that poverty prevented Plaintiff's leaving India, and that such "surrounding circumstances," combined with the threat of loss of employment, would compel a reasonable person to provide slave labor. But closer examination of Plaintiff's assertion belies that interpretation.

In paragraph 114, the word "financially" and all the words after "trip" would be superfluous if the intended meaning were that it was **impossible** for Plaintiff to pay to return home. Thus, Plaintiff's real contention is that he would have suffered financially if he had to pay to return to Joplin **without a job awaiting his return**. But no reasonable person would choose slave labor to avoid losing a job. Likewise, no reasonable person would choose slave labor over having to pay for a plane ticket unless it were absolutely impossible for him to pay for the ticket. Here, Plaintiff was careful not to plead impossibility.

Finally, if there were any doubt that this is not a forced labor case, Plaintiff's continued employment with ACG erases it. Plaintiff pleads that he is "currently a sales agent" for ACG and has been employed by ACG since 2007. Petition at ¶2. Plaintiff does not and cannot

---

[2] See Petition at ¶116, where Plaintiff states, almost verbatim from 18 U.S.C. §1589(c), "A reasonable person of the same background and in the same circumstances as Plaintiff would have felt compelled to perform or continue performing labor or services in order to avoid physical, psychological, and/or financial harm."

contend that he is still working for ACG out of fear of "serious harm." It defies credulity to suggest that Plaintiff only worked in India out of a fear of "serious harm," but now continues to perform the same work for ACG voluntarily in the United States. Plaintiff would not still be working for ACG if it had forced him unlawfully into labor. Plaintiff's Petition makes clear that he thinks he is entitled to greater compensation than the bonus and other benefits he received for his time in India. But it does not state a claim for forced labor.

5.  CONCLUSION.

Plaintiff's petition does not state a claim for forced labor under 18 U.S.C. §§1589 or 1595. Accordingly, the Court should dismiss Count V of Plaintiff's petition with prejudice.

ARMSTRONG TEASDALE LLP


By: */s/ Jeremy M. Brenner*
Robert A. Kaiser        #31410MO
Jeremy M. Brenner    #63727MO
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
314.621.5070
314.621.5065 (facsimile)
rkaiser@armstrongteasdale.com
jbrenner@armstrongteasdale.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

      I hereby certify that on July 17, 2013, the foregoing was filed electronically with the Clerk of the Court and will be served by operation of the Court's electronic filing system upon the following:

Anne Schiavone
Matt O'Laughlin
Kelly McCambridge
HOLMAN SCHIAVONE, LLC
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
aschiavone@hslawllc.com
molaughlin@hslawllc.com
kmccambridge@hslawllc.com

                                                      */s/ Jeremy M. Brenner*