IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| WAYLON VAUGHN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-5097-CV-SE-DGK |
| | ) | |
| AEGIS COMMUNICATIONS GROUP, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS COUNT V (FORCED LABOR) OF PLAINTIFF'S PETITION**

COMES NOW Plaintiff Waylon Vaughn, through his attorneys, and states the following in opposition to Defendant's Motion to Dismiss Count V:

**INTRODUCTION**

Defendant's Motion to Dismiss grossly underestimates the serious nature of Plaintiff's allegations. Not only does it ignore the majority of Plaintiff's Petition and the inferences that must be drawn therefrom, it undermines the severity of the misrepresentations it employed to entice Plaintiff to provide a year of cheap labor, which is an integral part of Plaintiff's Forced Labor claim and cannot be ignored. Count V of Plaintiff's Complaint meets the low threshold of plausibility required to defeat a 12(b)(6) motion to dismiss. Accordingly, Defendant's Motion should be denied.

Aegis compares Plaintiff's participation in its study abroad program to any other job, and it is reluctant to accept that it substantially changed the rules of at-will employment when it convinced Plaintiff to travel nine thousand miles from his home by making empty promises. Upon his arrival to Coimbatore, India, Plaintiff was

immediately subjected to an entirely different environment than what was represented to him. He was not a valued student working part time—he was cheap labor with no bargaining power. Additionally he was trapped in an unhealthy environment, not at all the environment that was represented to him. If Aegis had been candid in its representations, Plaintiff would have never traveled to India. Aegis suggests returning to Joplin was an easy remedy if Plaintiff had sincerely wanted to leave India. Defendant wholly ignores the reality that Plaintiff could not afford the plane ticket home. Plaintiff's only choice was to continue working, or be left to fend for himself in a foreign country with no money, food, housing, transportation or medical care. Additionally, to stop working meant to incur the entire cost of the Cornell University program—an amount unknown to Plaintiff.

## I.  RULE 12 (b)(6) LEGAL STANDARD

Defendant challenges Count V under Rule 12(b)(6), arguing that it fails to state a claim upon which relief can be granted. In deciding this motion, every allegation in the complaint must be accepted as true. *Aschcroft v. Iqbal*, 556 U.S. 662, 696 (2009). In addition, every reasonable inference based on those allegations is construed in favor of finding Defendant liable. *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op Finance Corp.*, 690 F.3d 951, 955 (8th Cir. 2012). Defendant's motion should be denied if the complaint contains enough facts to indicate liability without requiring speculation. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). There is no need to include an exhaustive list of "detailed factual allegations." *Id.* If the complaint establishes a plausible theory of liability, it states a claim and should not be dismissed. *Ashcroft*, 556 U.S. at 678.

## II. "FORCED LABOR" AS DEFINED BY THE LAW

Count V alleges Defendant acquired services from Plaintiff through Forced Labor, in violation of 18 U.S.C. § 1589. This statute makes it illegal to obtain labor or services from another person by making threats of "serious harm," § 1589(a)(2), or by using a scheme, pattern or plan intended to cause a person to believe that not performing services would result in "serious harm." § 1589(a)(4). The term "serious harm" is specifically defined. § 1589(c)(2). "Serious harm" can be "physical or nonphysical, including psychological, financial, or reputational." *Id.* The harm must be "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor services in order to avoid incurring that harm." *Id.*

Section 1589's prohibition on forced labor is not "limited to overt physical coercion." *U.S. v. Calimlin*, 538 F.3d 706, 714 (7th Cir. 2008). To amount to Forced Labor it "is sufficient that a defendant's misconduct has created a situation where ceasing labor would cause a plaintiff serious harm." *Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd.*, 790 F. Supp.2d 1134, 1145 (C.D. Cal. 2011). In addition to protecting victims of the "most heinous" forms of human trafficking, such as slavery and sex trafficking, the Trafficking Victims Protection Act protects individuals who are forced to perform labor by the defendant's use of fraud. *Id.* at 1145. "[S]ubtle psychological methods of coercion" can also constitute unlawful Forced Labor. *U.S. v. Bradley*, 390 F.3d 145, 150 (1st Cir. 2004), *vacated on other grounds*, 545 U.S. 1101 (2005).

Where a family convinced a Filipino housekeeper to stay inside their home and continue to work to avoid deportation, there was Forced Labor under Section 1589.

*Calimlim*, 538 F.3d at 709. To the housekeeper, the "serious harm" was not threats of deportation, but rather it was the threat of losing the ability to send money home to her family in the Philippines. *Id*. There was also Forced Labor where Jamaican workers were brought to the United States by a tree removal company and upon their arrival the company seized their passports—restricting their freedom to travel. *Bradley*, 390 F.3d at 148-49. Likewise, the scenario found to be Forced Labor in *Nunag-Tanedo* strongly suggests Forced Labor is sufficiently pled in this case.

Aegis has included a block quote from *Nunag-Tanedo* in its Motion to Dismiss in an effort to demonstrate that in this case Plaintiff's complaint fails because he agreed to the terms of his employment in India. *ECF Doc. 9*, 5-6. Defendant chose to end the quote right before the Court discussed how the employer's fraud changes everything, and results in Forced Labor. The opinion starts with a hypothetical scenario the Court concludes does not amount to Forced Labor (quoted by Aegis in its motion), but then the Court continued:

> But what if after the worker made the payment, the recruiters **alter the program terms** and costs? The recruiters demand an additional payment of double what the worker has already paid. **They threaten to kick the worker out of the program** if additional payments aren't made, and they keep the initial payment even if the worker decides to leave to program. The worker is therefore faced with a choice of forfeiting the first payment, knowing that repayment of the debt may be impossible, or paying the additional money the recruiters now demand. Knowing that working in this program is the only way to repay the initial debt, the worker pays the additional sum and continues working in the program.
>
> **Once the worker begins employment, complaints about the payments and working conditions are met with continued threats of termination and deportation**. Knowing that this job is the only way to repay the debt, the worker remains silent and continues working. Is this forced labor? Fraud? These are the questions now before this Court....

*Nunag-Tanedo*, 790 F. Supp. 2d at 1137 (emphasis added). The Court answered in the affirmative, denying the motion to dismiss the Forced Labor claim brought under Section 1589. *Id*. at 1146. The denial of the motion to dismiss considered the following: the application, interview, and selection were completed in the Philippines. Those selected paid a $5000 recruitment fee, but when they arrived in the United States a second payment was required. *Id*. at 1138. While in the U.S., workers' complaints about living, working, and financial conditions were responded to with threats of deportation and termination from the program. *Id*. at 1139. The Court found that these circumstances were enough to state a claim for Forced Labor.

The Defendants in *Nuang-Tanedo* argued the plaintiffs failed to state a claim by focusing on "a perceived lack of severity of Plaintiffs' financial situation and working conditions." *Id*. at 1145. Aegis makes the same argument in its Motion to Dismiss Count V. The Plaintiffs in *Nuang-Tanedo* alleged they agreed to certain terms of employment, transported to a foreign country, forced to accept altered terms, and were subsequently threatened with being terminated and deported if they did not continue to work. *Id*. at 1146. Here, Plaintiff makes similar allegations.

The Court in *Nuang-Tanedo* concluded that the plaintiff's allegations "clearly fall within the concept" of Forced Labor and "sufficiently state a claim under § 1589(a)." *Id*. at 1146. This Court should come to the same conclusion. The common thread that binds these two cases together is the employer's fraudulent misrepresentation regarding the terms and conditions of the employment in order to convince the employee to participate. Once the employee is thousands of miles from home, he feels compelled to work out of fear of what will happen if he stops. This is in fact forced labor.

In an attempt to persuade this Court to Dismiss Count V, Aegis draws attention to the Central District of California's hypothetical scenario—presented as an unfavorable, but legal, employment relationship—and argues the study abroad program implemented by Aegis is similarly legal. Aegis ignores the fact that after presenting the hypothetical, the Central District immediately explained why the factual scenario in *Nuang-Tanedo* was in fact not legal. More specifically, it was not legal because it had induced the workers to come to America by fraud. Such fraud is also what occurred in the instant case. It is for the above reasons that Defendant's Motion to Dismiss should be denied.

### III. COUNT V DOES NOT FAIL TO STATE A CLAIM

To support its Motion, Aegis isolates individual allegations and argues that each, by itself, fails to state a claim for Forced Labor. The approach Aegis advocates fails to consider the allegations in the aggregate, which is required at this stage. Count V of Plaintiff's Petition incorporates "each and every [of the 104] preceding paragraph[s] and thereby restates the same as if completely restated [in Count V]." Petition ¶105. As such, this Motion cannot be disposed of without contemplating Plaintiff's entire Petition. When viewed in its entirety, the study abroad program, as alleged, amounts to nothing more than a scheme intended to place employees in a situation where they must perform labor and provide services with no realistic alternative, which was designed and implemented for financial gain by Aegis.

Aegis argues that certain threats made by Aegis, if viewed in a vacuum, fall short of Forced Labor. That analysis is irrelevant. Each and every part of Aegis' scheme caused Plaintiff to fear that not working would result in serious harm. *Petition*, ¶111-112. Whether Plaintiff has sufficiently pled his Forced Labor claim depends on every allegation made by Plaintiff.

The following is what Plaintiff has alleged, which sufficiently states a claim for Forced labor: An employer convinced an employee to travel 9000 miles from home. *Petition*, ¶6, 9.[1] The employer presented a program that it characterized as a valuable educational opportunity. ¶7, 8. It was supposed to be an educational trip. *Id*. Aegis claimed the program was best for Plaintiff's future, because it would result in a promotion and a degree from a nationally-renowned University. ¶13-14. Plaintiff had been employed for four years, ¶2, 7, plenty of time to develop trust in his employer's HR Department, who supplied details about the trip. ¶17. There was even a detailed power point presentation with pictures and descriptions of exciting activities. ¶29. Plaintiff had no reason to doubt the truthfulness of what Aegis was telling him.

Aegis presented the details of the trip in a most favorable light. Selected employees would pay nothing for the trip and return home to an awaiting job. ¶10, 12. The program would last one year. ¶18. They would live in modern, clean, dormitory-style apartments, just like the pictures Aegis showed them. ¶33. They would save more money in India than they would be able to in Joplin. ¶34. They would be paid $100 per month, and $2000 upon completion of the program. ¶23, 25. If they decided to leave early, the costs of the trip, including the Cornell University fees, would be deducted from the $2000. ¶27. Everything would be provided for and controlled by Aegis—the food, the housing, transportation, the education, and the employment requirements. ¶12, 19, 21-22, 35. In exchange for all those provisions, Plaintiff would be required to work the

---

[1] The City where the Academy is located is misspelled in the Petition and should be "Coimbatore." Additionally, the distance between Joplin, Missouri and Coimbatore, India is not specifically alleged, but judicial notice can be taken of the distance between two locations. *See e.g.*, *Mutual Ben. Life Ins. Co. v. Robison*, 58 F. 723, 732 (8th Cir. 1893) (taking judicial notice of distance between two cities); *U.S. v. Wright*, 356 Fed.Appx. 886, 887 (8th Cir. 2009) (between two locations) (unpublished); *Untracht v. Fikri*, 454 F.Supp.2d 289, n.9 (W.D. Penn. 2006) (between two cities); *Market Transition Facility of New Jersey v. Twena*, 941 F. Supp. 462, 467-68 (D.N.J. 1996) (same); *see also* Fed. R. Evid. 201. The distance between Joplin and Coimbatore is 9072.8 miles, according to Groiler Online Atlas, operated by Scholastic, Inc. *See* http://go.groiler.com/atlas .

same job that he performed in Joplin, for thirty hours per week. ¶22, 37. What Plaintiff experienced in India was vastly different from what Aegis described and represented to him.

Upon his arrival in India, Plaintiff was thrust into an environment he never could have expected based on what Aegis told him. The hours he was required to work were steadily increased from part time (as represented), to full time, to overtime. ¶37-39. He was never paid on time, or in the full amount he was promised. ¶41-44. The living quarters were in substantially worse shape than what he was told, and basic services like water and electricity were unreliable and often completely unavailable. ¶45-49; 53. Aegis failed to provide as much food as was promised, and it was often spoiled, rotten, or unsafe to consume. ¶50, 52. To Plaintiff, it seemed everything Aegis told him, which convinced him to participate, was inaccurate. ¶69-70, 72. Every misrepresentation made by the company was intentional. ¶74-77. He had no way of knowing the truth while he was still in Joplin. ¶78.

Plaintiff made multiple complaints about the environment his employer exposed him to, but his complaints were met with fierce opposition. ¶54. Each time Plaintiff requested to come home, he was denied the right to have the costs subtracted from the $2000, as was promised. ¶25, 27. Instead, his employer and multiple supervisors said he had to pay for his own trip, ¶55-59, which he could not afford. ¶114. Because his trip would not be paid for, Plaintiff feared he might be stuck in India if he stopped working.[2] It was unclear whether he would owe Aegis money for expenses incurred during the trip

---

[2] Although not specifically alleged, discovery will show, and Defendant is aware, that a co-worker of Plaintiff, who in fact stopped working, was not provided food the entire time failed to provide labor or Aegis, and he was not sent home during that time. Rather he was left to fend for himself with scarce resources in India. *See Petition, Nick Watson v. Aegis Global Communications Inc.*, Case 3:13-cv-5017-SWH, ¶54-56.

to India. ¶27. He was also told that leaving India early would result in his job in Joplin being terminated. ¶60-61. He feared if he stopped working he would suffer severely. ¶111. If he returned to Joplin unemployed and without money, he could not support himself. ¶114. He feared he would be unable to find a new job because of the recent tornado that struck Joplin. ¶114. One State Agency approximated that between 4500 and 9000 jobs were lost in Joplin due to the tornado.[3]

Plaintiff feared he had no choice but to continue working against his will. Plaintiff continued providing labor and services to his employer for the remainder of the twelve months because he feared what would happen if he stopped. ¶62-63. He feared that returning to Joplin unemployed and with no money would result in dire consequences because of the economic crisis in Joplin. ¶115. Most significantly, Aegis fails to address that if Plaintiff would have known the truth about the program, which he was incapable of knowing, he would have never left Joplin. ¶72, 78. Aegis misrepresented the entire program to Plaintiff, which is the only reason he agreed to leave his home. ¶79, 108. The Forced Labor statute was intended to protect workers from this type of exploitation. *Nunag-Tanedo*, 790 F. Supp.2d at 1145. Based on the foregoing, Plaintiff has stated a viable claim against Aegis for Forced Labor under Section 1589. Defendant's Motion should therefore be denied.

Defendant misconstrues Plaintiff's Forced Labor Claim by suggesting that it challenges an employer's right to require its employees to work or be fired. It argues "[a]s a matter of law, it is not forced labor to hold a worker to terms of a deal." *ECF Doc.*

---

[3] *See* Sarah Okeson, *Tornado took as many as 9,000 jobs, official says*, the SPRINGFIELD NEWS-LEADER, JUNE 2, 2011, AT A1 (quoting Jasen Jones of the Workforce Investment Board of Southwest Missouri). This fact was not pled in Plaintiff's Petition, but is appropriate for judicial notice. *See* Fed.R.Evid. 201; *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F.Supp.2d 673, 680 (W.D. Tex. 2006).

9, p.5. This argument was rejected in *Nunag-Tanedo,* as it should be here, because what the employee agreed to was materially different than what he actually got. After all, "a contract induced by fraud is no contract at all." *Fogal v. Stature Const., Inc.,* 294 S.W.3d 708, 719 (Tex. Ct. App. 2009).

An employer is not allowed to make empty promises intended to fraudulently induce an employee to travel across the globe to provide labor, placing the employee in a position where they must either continue working or fend for themselves in an unknown environment with no money, and then threaten termination and additional financial damage if the employee stops working—that is the definition of Forced Labor. When the very essence of the employment relationship is founded on the employer's fraud, as Plaintiff alleges here, the Defendant is not free to skirt liability by arguing Plaintiff agreed to it.

Defendant also argues that because Plaintiff still works for Aegis, any doubt that he was forced to work while in India is "erased." In a Rule 12(b)(6) Motion to Dismiss, inferences cannot be drawn against the Plaintiff. On the contrary, the reasonable inference to be drawn is that the economic reality of living in Joplin, Missouri, is that finding a job is nearly impossible for someone with a similar background as Plaintiff. As the Court must consider whether "a reasonable person of the **same background** and in the **same circumstances**," 18 U.S.C. § 1589(c), would have continued to perform labor, the economic reality of living in Joplin, Missouri is highly probative. The fact that Plaintiff still works at Aegis only strengthens his allegation that he feared severe harm was inevitable if he returned to Joplin unemployed. At this stage in the litigation, every reasonable inference must be drawn in favor of Plaintiff, not against him.

Plaintiff has alleged that Aegis designed, constructed and implemented a plan that convinced him and other American employees to leave their homes and travel to an unknown world 9000 miles away. Once they arrived, they soon realized they had no choice but to provide labor. This is not a complaint about less than preferable job conditions, rather it is about an employer who abused its position of power to manipulate its employees. Plaintiff has not alleged he was a "slave," which is not required by the statute. He has not alleged the job he was required to perform was impossible or inhumane, also not required by the statute. Plaintiff has alleged that his employer's fraudulent scheme placed him in a position where he was forced to continue working because he feared if he stopped he would suffer serious harm. He has alleged Forced Labor.

WHEREFORE, based on the above and foregoing, Plaintiff respectfully requests Defendant's Motion to Dismiss Count V of Plaintiff's Petition be denied, and for such other relief as this Court deems just and proper.

HOLMAN SCHIAVONE, LLC

By: *s/ Anne Schiavone*
Anne Schiavone, MO Bar# 49349
Matt J. O'Laughlin, MO Bar#54025
Kelly McCambridge, MO Bar# 60839
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
Email: aschiavone@hslawllc.com
Email: molaughlin@hslawllc.com
Email: kmccambridge@hslawllc.com

ATTORNEYS FOR PLAINTIFF